```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE       *    MDL Docket No. 2004
                                     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS   *
                                     Case No.
LIABILITY LITIGATION            *    4:13-cv-14 (J. ECHEVERRIA)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Julia Echeverria was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Echeverria brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Echeverria also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor contends that Echeverria's claims are barred by the applicable statute of limitations. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 32 in 4:13-cv-14) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Echeverria, the record reveals the following. Echeverria is a resident of Alaska. In 2004, Echeverria sought treatment for stress urinary incontinence and decided to undergo a mesh sling operation. Dr. Kathleen Kobashi implanted ObTape in Echeverria on July 19, 2004 in Seattle, Washington.

In May 2006, Echeverria went to Dr. Richard Welling, her doctor in Alaska, complaining of pelvic discomfort, difficulty urinating, and blood in her urine. Dr. Welling told Echeverria that her ObTape had eroded and referred Echeverria to a urologist. The urologist confirmed the erosion. Echeverria called Dr. Kobashi and "told her there was something wrong with me vaginally, I knew something was definitely wrong." Echeverria Dep. 72:6-10, ECF No. 32-5.

Echeverria visited Dr. Welling again in early June 2006, and he noted that Echeverria had called "her specialist down south who suggested she come down as soon as she could conveniently arrange it and at that time, they would replace the urethral sling which apparently has been investigated as being potentially defective according to the Pt." Welling Dep. Ex. 6, Patient Note, June 2, 2006, ECF No. 32-7.  Dr. Welling did not remember whether Echeverria used the exact words that ObTape was being "investigated as potentially defective."  Dr. Welling did recommend that Echeverria have the ObTape removed.  Echeverria Dep. 81:22-82:5.

Echeverria visited Dr. Kobashi, who confirmed the erosion and removed Echeverria's ObTape on June 30, 2006.  Echeverria knew that Dr. Kobashi removed the sling to resolve the problems she was having with it.  By June 2006, Dr. Kobashi was telling her patients who had problems with ObTape that she had stopped using it due to a higher rate of extrusions compared to other slings.  Dr. Kobashi did not recall whether she spoke with Echeverria about this issue.  Echeverria did not investigate the possible causes of her symptoms in 2006.  She did not consider bringing an action against Mentor until late 2011, when she saw a television commercial regarding complications with mesh sling products.

Echeverria filed her Complaint on January 16, 2013. *See generally* Compl., ECF No. 1 in 4:13-cv-14. Echeverria brought claims for personal injury under the following theories: negligence, strict liability design defect, strict liability manufacturing defect, and strict liability failure to warn.

## DISCUSSION

Echeverria filed her action in this Court under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Alaska's choice of law rules thus apply. The parties agree that Alaska law, including its statutes of limitation, apply to Echeverria's claims because she is an Alaska resident and sought medical treatment related to her alleged ObTape injuries in Alaska.

The parties agree that Echeverria's claims are subject to a two-year statute of limitations. Alaska Stat. § 09.10.070(a) (requiring that actions for personal injury be "commenced within two years of the accrual of the cause of action"). The parties only dispute when Echeverria's claims arose. Alaska's statute of limitations begins to run when "a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action" or when a person "has

4

sufficient information to prompt an inquiry into the cause of action." *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991). That is, the statute begins to run on the date when the claimant "reasonably should have known of the facts supporting her cause of action" or "the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights." *Id.* at 1365 (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).[1] "A plaintiff does not have to understand the technical or scientific explanation for a defect before having knowledge sufficient to start the statute of limitations running." *Mine Safety*, 756 P.2d at 291. "Nor does the plaintiff need to be able to technically prove the case the day the complaint is filed." *Id.*

*Mine Safety* and *Cameron* are instructive on when a plaintiff should begin an inquiry regarding potential claims. In *Mine Safety*, the plaintiff was hit on the back of his head with a large metal object. His safety helmet cracked upon impact, and the plaintiff suffered a skull fracture. The plaintiff argued

---

[1] Alaska recognizes a third accrual date: "where a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit, the limitations period is tolled until a reasonable person discovers actual knowledge of, or would again be prompted to inquire into, the cause of action." *Cameron*, 822 P.2d at 1367. There is no evidence that Echeverria made any inquiry during the statutory period, so this accrual date does not apply here.

5

that the limitations period did not begin to run until he discovered evidence "that his safety helmet was defectively designed and that those inadequacies exacerbated his injuries." *Mine Safety*, 756 P.2d at 291. But the plaintiff "knew he was hit in the head while wearing a safety helmet designed to protect against such blows." *Id.* at 292. His employer investigated the accident, and the result of that investigation was available to the plaintiff shortly after the accident. The Alaska Supreme Court concluded "that under these circumstances a reasonable person would have notice of facts "sufficient to prompt a person of average prudence to inquire, and thus [the person] should be deemed to have notice of all facts which reasonable inquiry would disclose." *Id.* (alteration in original) (quoting *Russell v. Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987)). Because the plaintiff in *Mine Safety* "did nothing to investigate his claim" within the limitations period, his claim was barred. *Id.*

Similarly, in *Cameron*, the Alaska Supreme Court found that the plaintiff's claims were time-barred because he did not begin an inquiry into the cause of his breathing problems—which he believed were caused by his workplace conditions—until well after he was diagnosed with asthma. 822 P.2d at 1367. In *Cameron*, the Alaska Supreme Court found that the plaintiff had enough information to prompt an inquiry into his cause of action

6

when he learned that he had a medically documented condition which he attributed to his workplace conditions. *Id.; accord Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1271 (Alaska 2001) (finding that plaintiff's cause of action was time-barred because he made no inquiry after he was diagnosed with toxic fume exposure).

Echeverria argues that because she is not a doctor, she had no duty to begin an inquiry in 2006. In support of this argument, Echeverria cites *Gudenau & Co. v. Sweeney Insurance, Inc.*, 736 P.2d 763 (Alaska 1987). In that case, an insurance broker procured an insurance policy that excluded certain coverage the insured needed, although the broker assured the insured that it contained the needed coverage. After the insured suffered a loss that was excluded from coverage, the insured sued the broker for malpractice, and the broker argued that the insured should have read the policy and discovered the exclusion clause. *Id.* at 767. The Alaska Supreme Court disagreed, finding that the insured was entitled to rely on the broker's representations when interpreting the scope of his coverage.[2] *Id.* If Echeverria's doctors had told her that there was no problem with the ObTape and that her symptoms were just normal risks associated with the product, this argument might

---

[2] The Alaska Supreme Court did find that a diligent party would have discovered the limited nature of its insurance coverage when the insurer rejected its claim; the insured should have commenced an inquiry when its claim was denied. *Gudenau*, 736 P.2d at 767.

7

have some merit. But there is no such evidence in the present record, so *Gudenau* does not excuse Echeverria's failure to begin an inquiry in 2006.

Echeverria also contends that she did not have enough information to suspect that ObTape may be defective because she had been informed that erosion and infections were potential side risks associated with ObTape and because her doctors did not tell her that her injuries might be caused by a defect in ObTape. But based on *Mine Safety* and *Cameron*, the Court finds that Echeverria's claims accrued in June 2006. At that time, she had enough information to prompt an inquiry into her problems with ObTape. She knew that her ObTape had eroded and that "something was definitely wrong." Echeverria Dep. 72:6-10. She also knew that the ObTape had to be removed. Those facts should have prompted Echeverria to ask her doctors whether her symptoms were caused by a problem with ObTape or by some other problem. Furthermore, Dr. Kobashi believed in 2006 that ObTape had a higher erosion rate than other sling products, and Dr. Welling's patient notes stated that ObTape was being investigated as potentially defective. Had Echeverria asked, Dr. Kobashi presumably would have told Echeverria what she had told her other patients: that Dr. Kobashi believed ObTape had a higher rate of erosions than other slings.

8

For these reasons, the Court finds that no genuine fact dispute exists on when Echeverria's claims accrued. Her claims accrued by June of 2006. She did not file her Complaint until January 16, 2013—more than six years after her claims accrued. Therefore, Echeverria's claims are barred by the applicable statute of limitations, and Mentor is entitled to summary judgment on her claims.

## CONCLUSION

As discussed above, Mentor's Motion for Summary Judgment (ECF No. 32 in 4:13-cv-14) is granted.

IT IS SO ORDERED, this 5th day of October, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA